(118 App. Div. 502)

In re SMALL'S WILL.

(Supreme Court, Appellate Division, Third Department.　March 13, 1907.)

**1. EVIDENCE—OPINIONS—COMPETENCY OF TESTATOR.**

In a will contest, lay witnesses, who had stated acts of and conversations with testator, were improperly permitted to answer whether they were the acts and conversations of a rational or irrational person.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2242.]

**2. TRIAL—OBJECTIONS TO EVIDENCE—WAIVER.**

Where, in a will contest, a lay witness, who had stated acts of and conversations with testator, was asked whether they were the acts and conversations of a rational or irrational person, and the question was objected to as incompetent and immaterial, and that the question was improper in form, etc., whereupon, without waiting for a ruling, the wording of the question was somewhat changed, and contestants made "the same objection except as to form," they did not, by waiving the objection as to the form of the question, waive the objection.

**3. WILLS—BURDEN OF PROOF.**

In a will contest, the burden of proof is on the proponents.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 651.]

**4. APPEAL—REVIEW—REMARKS OF COURT.**

Where the court makes a remark which is understood as a ruling on a legal proposition by one of the parties, and is excepted to, and is erroneous and probably prejudicial to such party, the court on appeal may set aside the verdict for that reason, and it is immaterial whether the trial court intended to or did make a formal ruling.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, § 1417.]

Appeal from Special Term.

In the matter of proving the last will and testament of Daniel Small. From an order denying their motion for a new trial, contestants appeal. Reversed.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

H. V. Borst and E. A. Brown (A. J. Nellis, of counsel), for appellants.

J. Keck and N. J. Herrick (Edward R. Hall, of counsel), for respondent.

JOHN M. KELLOGG, J.　The report of this case in 105 App. Div. 140, 93 N. Y. Supp. 1065, gives the history of the litigation and many of the facts.　Other facts are:　22 days before his death the testator came to reside with Dr. Walrath, the principal beneficiary, and remained with him.　The will was executed 11 days thereafter.　There had previously been no particular relations between them, except the doctor was his tenant.　The testator was suffering from typhoid fever, but was around the house, not going out upon the streets.　An attorney prepared the will by the directions of, and delivered it to, the doctor.　The doctor delivered it to the testator.　The attorney first saw the testator in the matter later when he acted as one of the subscribing witnesses.　The estate is worth about $7,500.　For nearly three years before residing with the doctor, the testator had resided with the Taylor family, was much attached to them, and had intended

to will his property to them. They did not know he had left their place permanently, but expected his return. Prior to the making of the will, there is no statement of any intention to benefit the doctor by will, except one of the doctor's patients heard him tell Mrs. Walrath, about the time the will was executed:

> "You took me in when I had no place to go to. You have made a home for me here. I want to give Ab [the doctor] what I have got, and stay here as long as I live."

Under these circumstances, when a physician as chief beneficiary seeks to acquire the property of his patient by probate of a will, it is not asking too much that he make his title clear. The unusual circumstances speak quite eloquently. Courts should be careful to see that the will of the physician is not probated as the will of the patient. The evidence of the subscribing witnesses, of the members of the doctor's family, and of certain of his patients who while there for treatment saw the decedent, tend to show that he knew the contents of the will, and that he really intended and desired that the doctor should have his estate; and we cannot say that the verdict of the jury is against the weight of evidence. Upon the other hand, if the jury had decided against the will, the verdict would not be contrary to the evidence. These statements are made solely to show that the question was a close one, and that justice requires that the case should be decided upon its merits, uninfluenced by other considerations.

Many lay witnesses called by the contestants, after having stated acts of and conversations with the testator, were allowed, over contestants' objection and exception, to answer whether they were the acts and conversations of a rational or irrational person. The respondent relies upon Paine v. Aldrich, 133 N. Y. 544, 30 N. E. 725, and the questions were apparently taken from that case. There the plaintiff's lay witnesses at the trial were permitted to swear that the acts and conversations related by them were the acts and conversations of a rational person, but were not permitted to give a direct opinion as to the mind of the party, or their impressions whether he was rational or irrational. The plaintiff was defeated and appealed, and the only question before the Court of Appeals was whether the plaintiff was prejudiced by the exclusion of the opinion of the lay witnesses as to the state of mind of the grantor. In passing upon that question, the court remarked that laymen must be confined to saying whether the acts and conversation were rational or irrational, or were those of a rational or irrational person, and held that no error prejudicial to the plaintiff existed. It was not before the court whether a layman could say that the acts were those of a rational or irrational person, for that question below was permitted to the plaintiff, and the party against whom the decision was made did not appeal. The report of the case at General Term makes the facts more apparent. 14 N. Y. Supp. 538. The evidence in question here in effect characterized the mind of the decedent. "The rule authorizes the witness to characterize the acts but not the person doing the acts. The observer may state that the acts impressed him as irrational, not that the person impressed him as

irrational." People v. Pekarz, 185 N. Y. 470–481, 78 N. E. 294. The questions were therefore improper, and should have been excluded.

But it is urged that the appellants here are not in a position to raise this point. The question originally was asked the witness Rogers. It was objected to as "improper, incompetent, irrelevant, and immaterial, witness not shown competent to speak; that the question is improper in form and does not direct her attention and ask her if certain specific acts and certain specific conversation were rational or irrational; and, further, upon the ground urged, which we do not waive, that it is reopening their principal case." Without waiting for a ruling, the wording of the question was somewhat changed, and contestants then made "the same objection, except as to form." The objection was overruled, and exception taken. Like questions were put to many other witnesses, to which objection was made "same as to similar question to witness Rogers." The respondent urges that, by waiving the objection as to the form of the question, the appellant has waived this objection. That view of the occurrence is too technical. The real substance of the objection was the point now under discussion, and the objection was made so many times during the trial that the court was clearly aware that the contestants were insisting that a layman could not answer this question, which is permitted alone to experts. This objection went to the substance, and not to the form, of the question. By analyzing the objections there were eight specifications, one of which is as to the form of the question; another that the witness is incompetent to speak; another that the question does not direct the attention of the witness and ask if the acts and conversations were rational or irrational. By eliminating the objection as to form, the other seven objections stand, and are certainly sufficient to prevent a lay witness from giving this expert opinion.

At the beginning of the trial, the proponent put in the evidence of the subscribing witnesses, and then asked the court as to the proper course to be followed in the introduction of testimony. A discussion took place between the counsel and the court as to the order of proof, and the court decided the order in which the remainder of the evidence should be put in, and then said:

"Then there is the question as to who has the burden of proof, but I am not satisfied as to that at present, and I will meet the questions as they come up."

The proponent then called another witness, who gave testimony tending to show the competency of the testator and the absence of duress, and then rested his case. The court then remarked:

"I think the burden is upon the contestants to show incompetency and undue influence. We do not determine the validity of the will or the validity of its execution. We determine just simply two questions for the information of the surrogate. I shall hold, unless I am convinced otherwise, that the contestants have the burden here, and that they really ought to have opened the case. If it had been called to my attention at the opening of the case, I should have required the contestants to put in their testimony first; but we have drifted into this situation. I am going to hold that the burden of showing incompetency or undue influence is upon the contestants. (Contestants excepted.)"

### The Court:

"I am going to regard the proof put in so far as simply formal proof."

### The counsel for the contestants then said:

"Since the court has determined the law to be as you have determined it, without denying that it is the law, and stating to the court that we did not so understand it, that we understood the burden was upon the proponent, and that the proponent so understood it, we now ask that there be granted to these contestants the right to close the case to the jury under this ruling."

### To which the court remarked:

"I will pass upon that when we come to it. I will say you must now put in all the proof you intend to introduce, and I shall then hold strictly to rebuttal proof—what I regard as rebuttal proof when the testimony comes in—and I refuse to rule on the right to close. (Contestants excepted.)"

At the close of the testimony, the contestants requested to be allowed to close the case to the jury which the court denied, and they excepted. Nowhere else in the case is any question raised by counsel or discussed by the court as to the burden of proof. The charge of the court and the requests of counsel are silent upon that point. It seems that all considered that the court had settled and disposed of that matter.

It is now seriously contended that the court did not rule upon the question; that it merely made remarks about the order of proof which were not properly a subject of exception and review, and that counsel, by requests to charge, should have again brought the matter of the burden of proof to the attention of the court. By carefully reading what took place between counsel and the court, it is evident that all understood the question had been decided. If the court had not decided the question, when counsel took exception to the decision and made another motion expressly based upon that decision, it was clearly the duty of the court to inform counsel that the matter had not been decided and put the matter right upon the record. Assuming that the court had decided the matter, the contestants' counsel very properly omitted to again ask a decision upon a matter which had already been decided. Three separate things occurred upon the trial, which, when considered with reference to each other, show that the court had actually disposed of the burden of proof: (1) After the subscribing witnesses were sworn, proponent asked the court to determine the order of proof, which was done; the court expressly reserving the question as to the burden of proof. (2) After the proponent rested, the court brought up the reserved matter as to the burden of proof, and held it to be upon the contestants, to which the contestants excepted, and, referring to the ruling, asked the court to give them the right to close the case. The court expressly reserved that question for further consideration. (3) At the close of the testimony, this reserved question as to the right to close was again brought up and decided against the contestants. It is clear that the burden of proof in this case was upon the proponent, and that the announcement of the court upon that subject was error. The situation, however, was peculiar. The proponent and the contestants began the trial, both assuming that the burden of proof was upon the

former. During the trial the court decided of its own motion that it was upon the latter. If the court was right in this decision, then the contestants had suffered the proponent to open the case, and might perhaps be held by the court to have waived their right to close —by practically conceding it to the proponent by permitting him to open. Therefore, aside from the question of burden of proof, the particular manner in which this case had been tried made it very proper for counsel, after the decision of the former question, to have the court rule as to which party might close the case.

It is evident the contestants understood the matter had been decided, and excepted to the decision, and the facts gave good reason for such understanding. The remarks of the court will not now be given a technical construction for the purpose of avoiding an exception which the counsel has taken, and which the court permitted to remain in the record. But it is immaterial whether we view the statement of the court as an erroneous ruling, exception to which constitutes error of law, or treat it as an erroneous statement informally made by the court during the trial. It is well established that, where the court makes a remark which is not intended or understood as a ruling upon a legal proposition, and that remark is erroneous and probably prejudicial to the defeated party, the court may set aside the verdict for that reason. Davison v. Herring, 24 App. Div. 402, 48 N. Y. Supp. 760. It is therefore immaterial to determine whether the court intended to or did make a formal ruling. The heirs to this estate have a right to it, in the absence of a valid will, and whether there is a will should be determined upon the strict merits and the law of the case, unprejudiced by any erroneous statement of the court which may have misled the jury.

The order should be reversed, and the motion to set aside the verdict granted, and a new trial ordered, with costs to the appellants to abide the event. All concur; SMITH, P. J., in memorandum, and COCHRANE, J., in result, on the first ground mentioned in opinion.

SMITH, P. J. (concurring). I concur in the reversal of this case on the ground that the trial judge improperly ruled that the defendant had the burden of proof. I do not agree that the judgment should be reversed because of the ruling admitting the evidence of a lay witness that certain acts described were the acts of an insane person. To hold that a lay witness may characterize acts sworn to as rational or irrational, and that he cannot say that such acts were acts of a rational or irrational person, is to my mind splitting hairs, and, notwithstanding the ruling relied upon in the prevailing opinion in People v. Pekarz, 185 N. Y. 470, 481, 78 N. E. 294, it has never been held, and I do not believe that it ever will be held, that a judgment should be reversed because a lay witness was allowed to swear that certain acts described were those of an insane person. While such artificial distinctions may be indulged in for the purpose of sustaining a judgment, it cannot be that the questions are so far variant as to cause the reversal of a judgment otherwise properly supported.